**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SARAH NALE | No. 1:24-cr-00088-SDN |

**GOVERNMENT SENTENCING MEMORANDUM**

The government, by and through its undersigned attorney, files the following memorandum to aid in sentencing.

## a. The Court should impose the enhancement for abuse of a position of trust.

Section 3B1.3 of the Sentencing Guidelines provides for a two-level increase in offense level if the defendant abused a position of private trust "in a manner that significantly facilitated the commission or the concealment of the offense." U.S.S.G. § 3B1.3. The First Circuit has established a two-step analysis trial courts must perform to apply this guideline: first, the trial court must find that the defendant occupied a position of public or private trust; if such a position is established, the court must then find the defendant abused this position in committing the crime of conviction. *United States v. Pacheco-Martinez*, 791 F.3d 171, 178 (1st Cir. 2015); *United States v. Zehrung*, 714 F.3d 628, 630 (1st Cir. 2013); *United States v. Reccko,* 151 F.3d 29, 31 (1st Cir. 1998). The burden is on the government to prove facts, by a preponderance of the evidence, supporting each element. *United States v. Sicher*, 576 F.3d 64, 70 (1st Cir. 2009).

The determination of what constitutes a position of trust is not formulaic or subject to a check-list type analysis. In basic terms, "positions of trust are characterized

1

by significant discretion and minimal supervision." *United States v. Reccko*, 151 F.3d 29, 31 (1st Cir. 1998). But, in assessing the relative levels of discretion and supervision an offender enjoyed, the trial court does not apply any *per se* rule to the type of position the defendant held; rather, the court must make a determination of whether the relationship between defendant and victim was one of trust based on the facts of the case, considering primarily "the perspective of the victim." *United States v. George*, 841 F.3d 55, 66 (1st Cir. 2016). Job-titles and enumerated duties alone do provide the whole picture. Because each individual case presents its own unique circumstances, a particular position will fall somewhere on a spectrum of discretion and supervision. *Zehrung*, 714 F.3d at 630.

Relevant considerations include not only the type of discretion normally afforded the particular position, and the amount of supervision that type of employee normally receives, but also the personal relationship between the defendant and victim, the type of access to sensitive processes the defendant is granted, and the development of these relationships over time. *See United States v. O'Connell*, 252 F.3d 524 (1st Cir. 2001) (finding a position of trust under the Sentencing guidelines where the defendant had authority to transfer funds from a line of credit and where the defendant's relationship with the victims "rendered him a uniquely trusted employee."). *See also Pacheco-Martinez*, 791 F.3d at 178 ("[w]e may also consider whether the defendant used a personal relationship with the victim in order to facilitate the fraud");

For example, in *United States v. Sicher*, the defendant was the secretary and sole employee of an eye surgeon. 576 F.3d at 66-67. In addition to his busy medical practice and teaching duties, the surgeon also ran a charitable organization dedicated to raising funds and providing grants to combat child glaucoma. *Id.* Eventually, the surgeon

2

made Sicher the effective manager of the charitable fund, where she was unsupervised in tasks relating the receipt and disbursement of funds.  *Id.*  Although only the surgeon had signing authority for the fund's checking account, Sicher nonetheless forged 61 checks made payable to herself, and deposited them into her personal account, stealing over $172,000 in the process.  576 F.3d at 68.  In finding that the position of trust enhancement had been properly applied, the circuit court noted that it was not the defendant's position as a secretary alone that warranted the enhancement.  576 F.3d at 72.  Rather, the relevant factors were the lack of supervision she received in her duties while the surgeon focused on medicine and teaching, as well as the level of autonomy and discretion that was granted.  *Id.*

      The First Circuit's decision in *George* is also instructive on this point.  There, a high-ranking employee of a government contractor became so trusted by the defrauded government entity that he effectively gained a position of trust vis-à-vis that entity.  841 F.3d at 67.  In reaching this conclusion, the First Circuit held that the lack of meaningful supervision the entity exerted over the defendant's use of government funds was sufficient grounding for finding a position of trust.  *Id.* at 69.

      This case is nearly congruent with *Sicher*.  Like Sicher, Nale was the sole employee of Entity 2, and had duties than included handling funds of a related entity, in this case Entity 1.  The uncontested facts of the PSR, and the facts acknowledged at the plea colloquy as set forth in the prosecution version and in the information itself, confirm that Nale was responsible for keeping the books and was the sole handler of the business checkbook. She was entrusted with all the administrative duties and money handling.  As the sole employee of the entity, she well knew her duties and the level of supervision she had over those duties, which was effectively none. As was the case in

3

Sicher, this contributed greatly to the autonomy she was afforded, and the great faith placed in her fidelity. See George, 841 F.3d at 68. It cannot be plausibly denied that the defendant's position of trust "contributed in some significant way to facilitating the commission or concealment of the offense." U.S.S.G. § 3B1.3, application note 1.

That Nale had no subordinates is not relevant to the analysis in this case. While it is true that that the application notes describe the difference between a bank manager and a teller, it does not follow that someone with what amounts to a combination of those roles would not be in a position of trust. Nale was effectively the clerk as well as the office manager. Nothing about the applicable guideline—or justice, or common sense—indicates that small organizations do not or cannot contain positions of trust. In fact, as *Sicher* makes clear, these small organization may be more likely to rely on an employee in a position of significant trust. This is particularly true in professional offices, where the employer is forced, by simple economics, to focus on billable services, and will rely on a trusted employee for non-billable administrative functions, even vital functions like bookkeeping.

### b. The offense conduct is serious and unmitigated.

The PSR reflects multiple statements from the defendant about her motives. She stated she was under compensated. PSR ¶ 5. She stated she was giving cash to her adult son. PSR ¶ 9. She paid for her son's youth hockey. PSR ¶ 50. But none of these fully explain the defendant's course of conduct. The uncontested fact is that Nale stole more than $800,000 dollars, just in the decade described in the information. It is, therefore, disingenuous for her to claim she was under compensated; she compensated herself very well. And it is equally clear why she maintained her employment if she felt her work environment was challenging: no other job in Waterville, Maine was likely to pay

4

her nearly as much as she was stealing, and she was unlikely to gain a position of trust elsewhere where she could steal as much. Especially when one considers that her stolen funds were not subject to withholdings. She used this money to support her chosen lifestyle: a house with her husband; expensive sports for her son; late-model cars.

Despite the statements of the defendant and her husband (PSR ¶ 10), the Court may well consider that the theft increased up around the time Ms. Nale purchased her house, a house in which she currently has significant equity. PSR ¶ 48. The PSR indicates that without Nale's income, her household cash flow is likely negative. PSR ¶ 48. It can reasonably be concluded, therefore, that the equity built in her home was paid, in part, by the proceeds of her theft.

While Nale hid her activity by moving funds through Entity 2, the bulk of the theft was actually from Entity 1, and the theft accelerated greatly around the time Individual 1 left Entity 2. Thus, the suggestion that the defendant's work environment is somehow related to her decision to steal money is neither factually supported nor at all mitigating. Her motive to steal and to maintain the position where she could continue to steal is plain and pedestrian: desire for things she could not otherwise afford. If she was further motivated by vengeance, it would hardly be to her credit.

It should not be lost that $800,000 is a significant sum of money. And stealing from an employer who trusted her is a significant breach. While Ms. Nale has pleased guilty and agreed to restitution, the fact remains that she has minimized her conduct from the beginning (PSR ¶¶ 8 &9), and she has suggested that the money was for some other purpose than her own comfort (PSR ¶ 9). But the undisputed facts of this case show that her conduct was prolonged, sustained, mendacious, and selfish. A significant

punishment is required to show the seriousness of the offense, provide just punishment, and to deter others from similar conduct.

Dated:   November 8, 2024          Respectfully submitted,

DARCIE N. MCELWEE
United States Attorney

BY:  /s/  CHRIS RUGE
CHRIS RUGE
Assistant United States Attorney
United States Attorney's Office
202 Harlow Street
Bangor, Maine  04401
(207) 945-0373
Chris.ruge@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 8, 2024, I electronically filed **Government Sentencing Memorandum** with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

David W. Bate, Esq.

                                        DARCIE N. MCELWEE
                                      United States Attorney

                                      BY:  /s/  Chris Ruge
                                      Chris Ruge
                                      Assistant United States Attorney
                                      United States Attorney's Office
                                      202 Harlow Street
                                      Bangor, Maine  04401
                                      (207) 945-0373
                                      Chris.ruge@usdoj.gov